UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ARIME PTY, LTD., an Australian
company, POWERGEN
INTERNATIONAL, LLC, a Delaware
limited liability company; KAYTECH
INVESTMENTS PTY, LTD., an
Australian company; and FADIL
SADIKAY, an individual,

    Plaintiffs,

    v.

ORGANIC ENERGY CONVERSION
COMPANY, LLC, a Washington limited
liability company; ADVANCED
CONSOLIDATED TECHNOLOGIES,
LLC, a limited liability company; and
WILLIAM R. ROSE, an individual, d/b/a
William R. Rose & Associates,

    Defendants.

CASE NO. C09-5436BHS

ORDER GRANTING
PLAINTIFFS' MOTION FOR
LEAVE TO AMEND
COMPLAINT; DENYING IN
PART DEFENDANT ROSE'S
MOTION TO DISMISS
CLAIMS AGAINST HIM
WITH PREJUDICE; AND
ORDERING DEFENDANT
ROSE TO SHOW CAUSE

This matter comes before the Court on Defendant William R. Rose's motion for

dismissal with prejudice of all claims against him, pursuant to Fed. R. Civ. P. 12(b)(1)

(Dkt. 10) and Plaintiffs' motion for leave to amend complaint pursuant to Fed. R. Civ. P.

15(a) (Dkt. 11). The Court has considered the pleadings filed in support of and in

opposition to these motions and the remainder of the file and hereby denies Defendant's

motion and grants Plaintiffs' motion for the reasons stated herein.

## I. PROCEDURAL HISTORY

On July 17, 2009, Arime Pty, Ltd., an Australian company ("Arime"), filed a

complaint against Organic Energy Conversion Company, LLC, a Washington limited

liability company ("OECC"), and William R. Rose, an individual doing business as William R. Rose and Associates ("Rose"). Dkt. 1. On July 30, 2009, Rose filed an answer to the complaint, including affirmative defenses to Plaintiff's allegations. Dkt. 7. On August 27, 2009, OECC filed an answer to the complaint.

On August 28, 2009, Rose filed a motion for dismissal with prejudice of all claims against him. Dkt. 10. On September 21, 2009, Plaintiff filed a response to Rose's motion to dismiss. Dkt. 12. On September 25, 2009, Rose filed a reply to Plaintiff's response to his motion to dismiss. Dkt. 15.

On September 21, 2009, Plaintiff filed a motion for leave to amend their original complaint. Dkt. 11. Plaintiff attached as Exhibit 1 a proposed first amended complaint. *Id*. There was no opposition to Plaintiff's motion by Defendants.

On September 28, 2009, the Honorable Franklin D. Burgess reassigned this matter to the undersigned for all further proceedings. Dkt. 14.

Because the Court finds Plaintiff's motion for leave to amend (Dkt. 11) and Rose's motion to dismiss (Dkt. 10) interrelated, it will decide both motions herein.

## II. FACTUAL BACKGROUND

The instant matter arises out of a dispute between various stakeholders who agreed to form and/or join OECC. Arime is a limited liability company registered in Victoria, Australia. Dkt. 1 ¶ 1.1. OECC is a Washington limited liability company with its principal place of business in Tacoma, Washington. *Id*. ¶ 1.2. Rose is an individual residing in Tacoma, Washington, who allegedly does business as William R. Rose & Associates. *Id*. ¶ 1.3; *but see* Dkt. 7 ¶ 1.3 (Rose admitting residence in Washington but denying that he does business as William R. Rose & Associates).

On May 17, 2007, Arime and OECC entered into a Loan and Security Agreement for a loan in a principal amount of $2,000,000.00 (the "loan"). Dkt. 1 ¶ 4.1. Arime disbursed the loan to OECC in May of 2007. *Id*. On or about May 17, 2007, OECC delivered to Arime a secured promissory note for the original principal amount of

$2,000,000.00 (the "promissory note"). *Id*. ¶ 4.3.The promissory note required payment in full by OECC on or before July 1, 2009. *Id*. ¶ 4.6. Arime alleges that OECC failed to make timely payments required under the promissory note and is, therefore, in default. *Id*. ¶ 4.7.

Arime also alleges that, on or about March 19, 2008, it made a separate loan in the amount of $49,000 to Rose and that he has failed to repay this loan. *Id*. ¶ 4.9; *see also id*. ¶ 7.2. After answering Plaintiff's complaint (Dkt. 7), Rose filed his motion to dismiss with prejudice all claims filed against him (Dkt. 10).

On September 21, 2009, along with its motion for leave to amend complaint, Plaintiff attached its proposed first amended complaint. *See generally* Amended Complaint. In its proposed amended complaint, Plaintiff (1) adds additional parties; (2) alleges additional facts; and (3) alleges additional causes of action. *Id*.

**A.    Additional Parties**

Plaintiff contends that OECC "asserted a number of defenses, counterclaims, and third-party claims related to a broader business dispute involving Mr. Fadil Sadikay ('Sadikay') and various companies (including Arime) that he controls" and various companies that Rose controls (*id*. at 2), thereby increasing the scope of litigation. *See generally* Dkt. 12. As a result, Plaintiff requested leave to file an amended complaint to assert its claims relative to the broader dispute. *Id*.

Plaintiff proposes adding the following parties as additional Plaintiffs: PowerGen International, LLC ("PowerGen"), a Delaware limited liability company; Kaytech Investments Pty. Ltd ("Kaytech"), an Australian proprietary limited liability company; and Fadil Sadikay ("Sadikay"), an individual and resident of Australia who owns a controlling interest in Arime, PowerGen, and Kaytech. Amended Complaint ¶¶ 2-4.

As an additional Defendant, Plaintiff proposes to add Advanced Consolidated Technologies, a limited liability company ("ACT"). *Id*. ¶ 6. Plaintiff alleges that Rose has a controlling interest in ACT. *Id*. ¶ 7.

Unless otherwise necessary for clarity, the Court will hereinafter refer to the parties that Arime proposes to add as Plaintiffs collectively as "Plaintiffs," to include Arime. Considering that Rose's motion to dismiss pertains to him as an individual, the Court will continue to refer to the three defendants (OECC, ACT, and Rose) separately, though several of Plaintiffs' allegations are made against Defendants collectively.

**B.    Additional Facts**

On or about May 17, 2007, PowerGen and ACT entered into an operating agreement. Amended Complaint ¶ 13. These two entities were the initial members of OECC. *Id*. Kaytech and BVI[1] were later joined as members of OECC. *Id*. Sadikay and Rose manage OECC. *Id*.

As part of the agreement to establish OECC, Plaintiffs allege that the joining entities agreed to make certain capital contributions at the outset. *See Id*. ¶¶ 14-15. Plaintiffs further allege that:

> In order to induce Sadikay and PowerGen to contribute the PowerGen Technology[2] to OECC and to enter into the Operating Agreement and to induce Arime to fund the start-up of OECC with a $2 million loan, Rose and ACT made numerous false representations to Sadikay, PowerGen, and Arime, including but not limited to: (a) ACT actually owned certain technology that was to constitute its capital contribution to OECC; (b) the technology that was to be ACT's capital contribution was functioning technology; (c) that Rose and ACT had obtained permits from appropriate governing bodies that would permit OECC to commence business; and (d) that Rose and Act had contracts in place that would allow OECC to recognize an immediate revenue stream.

*Id*. ¶ 15. In conjunction with this allegation, Plaintiffs claim that "Rose and ACT either knew these representations were false when made or recklessly disregarded their falsity" (*id*. ¶ 16) and that "Rose and ACT made these statements with the knowledge that Sadikay and PowerGen and Arime would rely upon them and in fact intended them to

---

[1]Plaintiffs assert BVI is a third-party entity (not party to this action) that is owned and controlled by Rose. Amended Complaint ¶ 6.

[2]Plaintiffs contend that PowerGen "developed certain, patented, fuel technology (the "PowerGen Technology"). Amended Complaint ¶ 14.

rely on these misrepresentations." *Id.* ¶ 17. Plaintiffs further claim that Sadikay and PowerGen, relying on these representations, entered into the operating agreement with OECC, and Arime loaned OECC $2 million in consideration of and in reliance upon Defendants' promises and representations. *Id.* ¶ 18.

**C.    Additional Causes of Action**

Based on the allegations identified in the original complaint and the allegations presented in the proposed amended complaint, Plaintiffs assert several causes of action relevant to the allegations against Rose, though some of these allegations are brought against Defendants collectively.  These proposed causes of action include (1) breach of contract by Rose for failing to repay the $49,000 loan (*id.* ¶¶ 36, 37); (2) unjust enrichment for Rose's retention of the loan proceeds (*id.* ¶¶ 40, 41); (3) negligent misrepresentation based on Defendants' alleged provision of false information, which Plaintiffs justifiably relied upon, which caused damages in excess of $75,000 (*see id.* ¶ 45); (4) common law fraud based on Defendants' alleged misrepresentations, which caused damages to Plaintiffs in excess of $75,000 (*see id.* ¶¶ 48, 49); (5) breach of fiduciary duties owed to Arime, Sadikay, PowerGen, and Kaytech, which caused damages in an amount to be proven (*id.* ¶¶ 51, 52, and 53); (6) conversion based on allegations that the acts and omissions of Defendants caused Plaintiffs to be deprived of their property in an amount to be proven (*id.* ¶¶ 55, 56); and (7) breach of implied covenants of good faith and fair dealing based on Defendants' alleged acts and omissions, which caused damages in an amount to be proven (*id.* ¶¶ 58, 59).

## III. DISCUSSION

**A.    Plaintiffs' Motion to Amend Complaint**

Plaintiffs move the Court for leave to amend their complaint. Dkt. 11. Where an answer has been filed, a party may not amend its complaint without "the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). In considering whether to permit amendment, courts

consider the following factors: "(1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment; and (5) whether plaintiff has previously amended his complaint." *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990). Further, where a party fails to file papers in opposition to a motion, such failure may be considered by the court as an admission that the motion has merit. Local Rule 7(b)(2).

Here, an answer was filed before Plaintiffs proposed amending their complaint. *See* Dkt. 7, 9 (answers filed by Defendants on July 30, 2009 and August 27, 2009); *see also* Dkt. 11 (motion for leave to amend complaint filed on September 21, 2009). Although Defendants have not consented to Plaintiffs' proposed amendment, no party opposes Plaintiffs' motion for leave to amend. Having considered the relevant factors, the Court finds that Plaintiffs' motion has merit and, therefore, grants Plaintiffs' motion for leave to amend their complaint.

**B.    Rose's Motion to Dismiss, Diversity Jurisdiction**

Rose moves the Court, pursuant to Fed. R. Civ. P. 12(b)(1), to dismiss with prejudice all claims filed against him in this matter for lack of subject-matter jurisdiction. Dkt. 10 at 2. The federal diversity jurisdiction statute, 28 U.S.C. § 1332, vests district courts with jurisdiction over "all civil actions" between citizens of different states where the matter in controversy exceeds $75,000. 28 U.S.C. § 1332(a). Subject matter jurisdiction may be raised at any point during the proceedings. *See, e.g.*, *Mutuelles Unies v. Kroll & Linstrom*, 957 F.2d 707, 711 (9th Cir. 1992) (no waiver after four-year delay).

Rose argues that the alleged loan of $49,000 falls short of a claim in excess of $75,000, which is required by 28 U.S.C. § 1332(a). Dkt. 10 at 4. He further argues that Plaintiffs failed to articulate any link between him, individually, and OECC. *Id*. On this basis, he contends diversity jurisdiction cannot be conferred upon him based on the debts owed by OECC, which allegedly exceed $75,000. *Id*. If only the original complaint is

considered, the Court would agree, but his arguments must be considered in light of Plaintiffs' proposed amended complaint.

In opposition, Plaintiffs argue that Rose's motion should be denied based on the allegations in its proposed amended complaint. Dkt. 12 at 2. Plaintiffs contend that the proposed amended complaint cures any defect in the original complaint with respect to diversity of citizenship. *Id*. Plaintiffs assert that the proposed amended complaint establishes an amount in controversy exceeding $75,000 and that they allege sufficient facts to confer jurisdiction to the Court over Rose in this matter. *See id*. at 2-3.

"The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith." *St. Paul Indemnity Co. v. Cab Co.,* 303 U.S. 283, 288 (1938); *see also Pachinger v. MGM Grand Hotel-Las Vegas, Inc.*, 802 F.2d 362, 363-64 (9th Cir. 1986) ("amount in controversy is normally determined from the face of the pleadings"; to warrant dismissal, "[i]t must appear to a legal certainty that the claim is really for less than the jurisdictional amount . . . ."). Where a plaintiff submits a proposed amended complaint, a court will look to the face of the amended complaint to determine whether the requisite sum has been pled, as opposed to the original complaint on file when the defendant filed his or her motion to dismiss. *See Crum v. Circus Circus Enterprises*, 231 F.3d 1129, 1131 (9th Cir. 2000) (reversing trial court's Rule 12(b)(1) dismissal where plaintiff's proposed amended complaint alleged an amount in controversy exceeding $75,000). In *Crum*, the Court of Appeals reviewed the face of the amended complaint and determined that, because Crum alleged she incurred in excess of $13,000 in medical services and treatment, $100,000 in lost income, and $36,000 in medical expenses, it did "not appear legally certain that Crum cannot recover more than $75,000." *Id*.

Here, based on Plaintiffs' proposed amended complaint, Plaintiffs have pled an amount in controversy that well exceeds the jurisdictional requirement of $75,000. *See*

Amended Complaint ¶¶ 44-49 (alleging an amount in controversy of at least $2,000,000.00). Although Plaintiffs failed to link Rose to the $2,000,000.00 in their original complaint, Plaintiffs have at least facially linked him to the amount in their amended complaint. *Id*. Plaintiffs allege that Rose individually, and together with ACT, provided false representations which led Plaintiffs to justifiably rely on these representations and caused them to contribute capital in different forms in consideration for joining OECC. *Id*. ¶ 15.

Therefore, because Plaintiffs' amended complaint alleges an amount in controversy exceeding $75,000 and because the original complaint does not appear to a legal certainty that Plaintiffs' claim is in fact for an amount less than the jurisdictional requirement, the Court denies Rose's motion to dismiss with prejudice all claims against him on the issue of diversity jurisdiction.

**C.     Rose's Motion to Dismiss, Fed. R. Civ. P. 12(b)(6)**

Although it is not clearly identified as such, Rose apparently moves the Court, in the alternative, to dismiss with prejudice all claims against him based on Rule 12(b)(6). *See* Dkt. 15 at 3-5 (apparently conflating Rule 12(b)(6) arguments with his Rule 12(b)(1) arguments). The Court finds this to be the case for two reasons: First, Rose relies on two Supreme Court cases that concern Rule 12(b)(6) and not 12(b)(1). *See id*. (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, ___ U.S. __, 129 S. Ct. 1937, 1949 (2009)). Second, Rose makes arguments that, if true, would establish that Plaintiff has failed to assert claims for which relief can be granted. *See id*. at 3. The Court, therefore, considers Rose's apparent alternative argument pursuant to Fed. R. Civ. P. 12(b)(6).

Fed. R. Civ. P. 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Courts need not accept legal conclusions couched as factual allegations. *Twombly*, 550 U.S. at 555. Where a plaintiff's complaint fails to state a claim on which relief can be granted, the complaint must be dismissed.

Fed. R. Civ. P. 12(b)(6). The court will find the complaint insufficient where it does not allege sufficient facts which, if true, would provide adequate grounds for the plaintiff's entitlement to relief. *Twombly*, 550 U.S. at 544. The Supreme Court, expanding on *Twombly*, held as follows:

> [T]he pleading standard [under Fed. R. Civ. P.] 8 does not require "detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of further factual enhancement."

*Ashcroft*, 129 S. Ct. at 1949 (citations omitted).

Where a complaint contains sufficient factual matter which, if accepted as true, "state[s] a claim to relief that is plausible on its face," the complaint will survive a motion to dismiss. *Id.* (citing *Twombly*, 550 U.S. at 570). For a claim to have facial plausibility, a plaintiff must plead facts that allow the court to reasonably infer that the defendant is liable for that which is alleged. *Id.* (citing *Twombly*, 550 U.S. at 556). The Court, in *Iqbal*, noted that the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

In *Iqbal*, the Court noted two "working principles" that underlie the decision in *Twombly*:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss.

*Id.* In discussing the application of these principles, the Court further noted that, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Id.* at 1950 (citations and internal markings omitted).

Rose argues that RCW § 25.15.125 prevents a manager or member of a limited liability company ("LLC") from liability for the acts or omissions of the LLC. Defendant correctly notes, however, that this statute does permit a finding of liaiblity for a member's

or manager's own torts. RCW § 25.15.125(2). Rose next argues, relying on *Iqbal* and *Twombly*, that Plaintiffs make only threadbare recitals and conclusory allegations, which fail to establish plausible allegations against him with respect to their claimed causes of action. Dkt. 15 at 5. Rose also argues that Plaintiffs fail to attribute specific amounts of damages to him. The Court is not persuaded by these arguments.

In *Twombly,* the Court held implausible an allegation of parallel conduct and a bare assertion of conspiracy because sufficient factual allegations were lacking in the complaint. 550 U.S. at 557. Similarly, in *Iqbal*, the Court identified the naked allegations, which merely recited the elements of the claimed causes of action. 129 S. Ct. at 1951. For example, in *Iqbal*, "Respondent pleads [in the complaint] that petitioners 'knew of, condoned, and willfully and maliciously agreed to subject [him]' to harsh conditions of confinement 'as a matter of policy, solely on account of [his] religion, race, and/or national origin and for no pernological interest.'" *Id*. (citations omitted). The complaint also alleged that "Ashcroft was the 'principal architect' of this invidious policy . . . and that Mueller was 'instrumental' in adopting and executing it.'" *Id*. The Court held these allegations to be bare assertions that could not plausibly suggest entitlement to relief. *Id*. These allegations, the Court noted, are not entitled to the assumption of truth because they are merely legal conclusions. *Id*. The *Iqbal* court also considered factual allegations, as opposed to legal conclusions, to determine if they plausibly suggest entitlement to relief, if true. *Id*. However, *Iqbal* and *Twombly* are distinguishable from the instant matter.

Here, although Plaintiffs do make some allegations that are not entitled to the assumption of truth for the purpose of the motion, that is not the case for the allegations set out in paragraph 15 of the amended complaint. In paragraph 15 Plaintiffs allege that Rose and OECC, based on false representations, (1) induced Sadikay and PowerGen to contribute the PowerGen Technology and to enter into the operating agreement with OECC; and (2) induced Arime to contribute a $2 million loan. Plaintiffs also specifically identified the alleged false representations, to include that: (a) ACT actually owned

certain technology that was to constitute its capital contribution to OECC; (b) the technology that was to be ACT's capital contribution was a functioning technology; (c) Rose and ACT had obtained permits from appropriate governing bodies that would permit OECC to commence business; and (d) Rose and Act had contracts in place that would allow OECC to recognize an immediate revenue stream. Amended Complaint ¶ 15. These allegations, if true, form the basis for the claimed tortious causes of action against Rose and specifically implicate him in the $2 million loan transaction. These allegations are not legal conclusions or merely threadbare recitals.

When the Court takes these allegations as true, which it must, it concludes that the Plaintiffs have alleged sufficient facts which plausibly suggest an entitlement to relief. *See Twombly*, 550 U.S. at 556; *see also Iqbal*, 129 S. Ct. at 1951. Further, Rose fails to establish that RCW § 25.15.125 provides a complete defense to the claims made against him. *See generally* Dkt. 15. Indeed, he admits that a member and/or manager can be held liable for his or her own torts. *Id*. Therefore, the Court denies Rose's motion to dismiss with prejudice on this issue.

**D.    Supplemental Jurisdiction**

Section 1367 of Title 28 governs supplemental jurisdiction and provides in part as follows:

> (a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.
> (b) In any civil action of which the district courts have original jurisdiction founded solely on section 1332 of this title, the district courts shall not have supplemental jurisdiction under subsection (a) over claims by plaintiffs against persons made parties under Rule 14, 19, 20, or 24 of the Federal Rules of Civil Procedure, or over claims by persons proposed to be joined as plaintiffs under Rule 19 of such rules, or seeking to intervene as plaintiffs under Rule 24 of such rules, when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332.

28 U.S.C. § 1367. Subsection (a) provides for supplemental jurisdiction over claims arising out of the "same case or controversy," and subsection (b) places limits on the exercise of such jurisdiction based solely on diversity of citizenship.

Because the Court is not convinced that Plaintiffs' allegations surrounding the $49,000 loan made by Arime to Rose are properly before the Court based on supplemental jurisdiction, the Court orders Plaintiffs to show cause why the Plaintiffs' claims relevant to the $49,000 should not be dismissed for failing to meet diversity jurisdictional amount in controversy requirements pursuant to 28 U.S.C. § 1331.

## IV. ORDER

Therefore, it is hereby **ORDERED** as follows:

1.      Rose's motion to dismiss all claims against him (Dkt. 10) is **DENIED in part**;

2.      Plaintiffs' motion for leave to amend complaint is **GRANTED**; and

3.      Plaintiffs may **SHOW CAUSE**, if any they have, as stated herein, no later than November 3, 2009, in a brief not to exceed 15 pages.  Defendants may respond no later than November 10, 2009, in a brief not to exceed 15 pages.  Rose's motion to dismiss (Dkt. 10), limited to the $49,000 loan, is renoted for consideration on November 10, 2009.

DATED this 26th day of October, 2009.


_____
BENJAMIN H. SETTLE
United States District Judge