UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ARIME PTY, LTD., et al,<br><br>        Plaintiffs,<br><br>   v.<br><br>ORGANIC ENERGY CONVERSION COMPANY, LLC, et al,<br><br>        Defendants. | CASE NO. C09-5436BHS<br><br>ORDER DENYING DEFENDANT ROSE'S MOTION FOR PARTIAL SUMMARY JUDGMENT |

This matter comes before the Court on Defendant William R. Rose's ("Rose") motion for partial summary judgment[1] (Dkt. 28). The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby denies the motion for the reasons stated herein.

## I. PROCEDURAL HISTORY

On June 9, 2010, Rose moved for partial summary judgment in this matter. Dkt. 28. On July 2, 2010, Plaintiffs (collectively, "Arime") responded in opposition. Dkt. 30. On July 9, 2010, Rose replied. Dkt. 32.

---

[1] Although Rose styles his motion as one for summary judgment on all claims, this language is contradicted by his contention that his motion involves only one alleged fact, that he did not receive a personal loan for $49,000 from Plaintiffs. *See* Dkt. 28 at 3. Because of this limitation, the Court will not consider any other issues herein on summary judgment; however, even if Rose has attempted to put them before the court, they are not adequately briefed.

ORDER - 1

## II. FACTUAL BACKGROUND

The instant matter arises out of a dispute between various stakeholders who agreed to form and/or join Organic Energy Conversion Company, LLC ("OECC"). One of those persons is Rose, who allegedly does business as William R. Rose & Associates. *Id.* ¶ 1.3; *but see* Dkt. 7 ¶ 1.3 (Rose denying that he does business as William R. Rose & Associates).

To fund this project, Arime and OECC entered into a Loan and Security Agreement for a loan in a principal amount of $2 million. Dkt. 1 ¶ 4.1. Arime also alleges that, on or about March 19, 2008, a separate personal loan in the amount of $49,000 was made to Rose and that he has failed to repay this loan. *Id.* ¶ 4.9; *see also id.* ¶ 7.2.

## III. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). See also Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *Id*. (relying on *Anderson*, *supra*). Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

**B.     Rose's Summary Judgment Motion**

Rose moves the Court to enter summary judgment on the issue of whether he ever received a personal loan in the amount of $49,000, allegedly made for use in forming OECC. *See* Dkt. 28 at 3. Rose has limited his motion to this fact. *Id.* ("The only fact relevant to this motion involves [Arime's] alleged $49,000 loan . . ."). Rose asserts that he never personally borrowed the alleged $49,000. *See, e.g.,* Declaration of Anthony S. Wisen (Dkt. 31), Ex. A (Rose Deposition) at 165. Rose also claims that Arime has no proof that he ever received such a personal loan (i.e., no documentary proof). *See* Dkt. 28. In short, the only question before the Court in this motion is whether Rose did or did not receive a personal loan as claimed by Arime and denied by Rose. *See* Dkts. 28, 32.

In opposition, Arime admits that the documentary evidence is sparse but that the issue before the Court is one of credibility and weight. *See* Dkt. 30 at 6 ("this is a quintessential 'he said/he said' factual dispute regarding the proper characterization of the

ORDER - 3

$49,000 . . ."). To support its position, Arime relies on deposition testimony and limited documentary evidence. *See* Wisen Decl., Ex. B at 69-70 (deposition of Sadikay, wherein he asserts that the $49,000 at issue constituted a personal loan to Rose). Sadikay testified that the parties agreed to acquire 98,000 more shares of OECC at $1 per share. *Id*. at 69. Arime alleges that this meant $49,000 was needed from Rose and the same from Sadikay. *See id*. To further support its position, Arime asserts that it wired the money to Rose. *See id*, Ex. A (Rose Deposition) at 168.[2] To support this contention, Arime relies on an email from OECC's general counsel, Jim Jory, to Tom Cahill that reads, in relevant part "It is my understanding that Butch is *loaning* $49,000 to [Rose] . . . ." Wisen Decl. at 24.

Significantly, neither party has submitted (or pointed out) bank records that would evidence the presence or absence of the alleged loan transfer to Rose. The Court, therefore, is left to resolve the instant motion based on conflicting deposition testimony and limited documentary evidence.

**C.   Conclusion**

When "direct evidence produced by the moving party conflicts with direct evidence produced by the nonmoving party, the judge *must assume the truth* of the evidence set forth by the nonmoving party with respect to that fact." *Leslie v. Group ICA, et al*., 198 F.3d 1152, 1158 (9th Cir. 1999) (quoting, *T.W. Elec. Serv. Inc.*, 809 F.2d 626). Viewed in the light most favorable to Arime, the parties have each put forth competing

---

[2]Rose highlights portions of Sadikay's deposition wherein he testifies that the $49,000 at issue ultimately ended up in the hands of OECC. *See* Dkt. 28 at 14 (excerpt of Sadikay deposition). This is a distinction that may come without a difference: if a fact finder determined the money to constitute a loan to Rose, which is the question before the Court, it would make no difference whether Rose received but immediately transferred the money to OECC. If "A" borrows from "B" but then transfers the money to "C", "A" may still owe "B" the money borrowed, assuming "A" is the promissor. Therefore, Rose's reliance on such a fact is irrelevant to the determination of the instant motion.

ORDER - 4

evidence with respect to this issue, leaving a material question of fact to be determined at trial as to whether a personal loan was ever made to Rose.

## IV. ORDER

Therefore, it is hereby **ORDERED** that Rose's motion for partial summary judgment (Dkt. 28) is **DENIED**.

DATED this 11th day of August, 2010.

BENJAMIN H. SETTLE
United States District Judge

ORDER - 5